## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TRESHA C.,

       *Plaintiff,*

  vs.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

       *Defendant.*

Case No. 6:22-CV-01171-EFM

## MEMORANDUM AND ORDER

Plaintiff Tresha C. brings this action seeking review of the final decision by Defendant, the Acting Commissioner of Social Security ("Commissioner") denying her application for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq.  Plaintiff alleges that the administrative law judge ("ALJ") erred in failing to address the consistency and supportability of the medical opinion of Plaintiff's treating physician, Dr. Nirupama Tamirisa.  Plaintiff also asserts that substantial evidence did not support the ALJ's determination that Dr. Tamirisa's opinion lacked supportability and consistency.  For the reasons set forth below, the Court affirms the ALJ's decision.

## I.     Factual and Procedural Background

**A.     Plaintiff's medial history**

Plaintiff is a middle-aged woman who started receiving treatment for mental issues in October 2019.  In January 2020, she was admitted to a hospital after being found hiding in a corner of her bathroom suffering paranoid delusions.  She was not on any prescribed medications to deal with her mental symptoms at that time.  Nevertheless, upon admittance to the hospital, she exhibited normal speech, good attention, intact memory, and was alert and oriented.  Plaintiff spent six days in the hospital, with medical personnel prescribing various medications to deal with anxiety, mood instability, and psychosis.  Two days after release, she had a video treatment session with High Plains Mental Health Center ("High Plains") where she exhibited fair insight and normal appearance, speech, mood, affect, attention and concentration, thought content, associations, orientation, fund of knowledge, and memory.

In March 2020, Plaintiff attended another appointment at High Plains, complaining of high anxiety, occasional panic attacks, racing thoughts, excessive worry, impaired focus and concentration, catastrophic thinking, and distractibility.  The medical report from the visit noted that Plaintiff had fair insight and judgment.  It also noted that Plaintiff had been off her medication for a week.  In June 2020, Plaintiff had another mental status examination, showing fully normal mental functions.  At that session, Plaintiff reported weight gain since starting the medication as well as lethargy, sleeping, and low motivation during the daytime.

In July 2020, Plaintiff's telephone visit with her medical care provider revealed that her anxiety had increased after she had reportedly been unable to refill her medications.  The next month, Plaintiff reported that she was "doing okay" but found the prescribed medication less

helpful.  In November 2020, her treating physician, Dr. Tamirisa, changed Plaintiff's medication after similar reports.  Her mental status examinations remained normal throughout these months.

In January 2021, Plaintiff showed overall improvement in her anxiety levels with consistent use of her medication and had a normal mental status examination.  A medical visit in March 2021 revealed increased nightmares, worries about her children, and occasional panic attacks.  In May 2021, Plaintiff experienced a seizure after failing to take medication for a week.  Two months later, she reported that she was doing well but was confrontational about needing refills of her medication, despite voluntarily discontinuing one of them due to it increasing her appetite.   Her mental status examination revealed irritability, fair insight and judgment, and otherwise normal mental functions.  In August 2021, Plaintiff visited the emergency room complaining of chest pain and shortness of breath.  These symptoms appeared to be caused by anxiety but responded well to medication.  In September 2021, a High Plains report contained a "[f]air to guarded" prognosis, noting that Plaintiff "referred herself, is open to services, wants to relieve the distress, does have support in her daughter but being triggered by past trauma and not taking her medication consistently."

Her therapy records for the rest of 2021 reveal Plaintiff's cooperation with learning coping skills, although her reports regarding her relationships with family members vacillated between positive and negative.  Despite regular tearfulness, increased triggers after moving in with her mother, and occasional frustration with her daughter, Plaintiff stated she felt supported by her mother and daughter.  She also worked with her therapist to better manage familial boundaries and generate coping mechanisms.

On December 14, 2021, Dr. Tamirisa submitted a two-page medical opinion in which she listed each of Plaintiff's mental functions as either mildly or moderately limited.  She then opined

that Plaintiff would have to miss four days of work per month and would be "off task" at least 20%

of the time.  The opinion did not mention or contain any analysis of any evidence replied upon to

arrive at this conclusion.  Relevant to the parties' arguments in this case, Dr. Tamirisa's opinion

included differing definitions for extremely limited, markedly limited, and moderately limited.

Namely, the opinion defined "Extremely Limited" as producing a "90% overall reduction in

performance."  In contrast, "Moderately Limited" only resulted in a "30% overall reduction in

performance."

## B.      Procedural history

Plaintiff initially applied for disability benefits on September 28, 2020.  The SSA denied

her application in February 2021 and again on reconsideration in July 2021.  After filing a request

for a hearing, Plaintiff attended a hearing before an ALJ on December 23, 2021.  In a written order

following the hearing, the ALJ found that Plaintiff suffered from the following severe

impairments: seizure disorder, post-traumatic stress disorder, and generalized anxiety disorder.  He

also found that none of Plaintiff's impairments met or equaled a medical listing under step three

of the Act's analysis.  Accordingly, the ALJ formulated Plaintiff's residual function capacity

("RFC") with respect to Plaintiff's mental limitations as follows:

> The claimant may occasionally interact with supervisors, but cannot tolerate close
> "over-the-shoulder" supervision.  The claimant may occasionally interact with
> colleagues if meetings are brief and task oriented, but may not interact with the
> public.  The claimant may work in locations devoid of dense crowds (e.g. fairs,
> festivals, busy retail locations).  The claimant can understand, remember, and
> execute intermediate instructions consistent with semiskilled work, but can
> maintain concentration, persistence, and pace for simple instructions consistent
> with unskilled work.  The claimant may perform low stress work, defined as only
> occasional workplace changes, making occasional simple decisions, and
> performing tasks in which the individual has some control over work pace subject
> to ordinary overall production requirements.

In arriving at this RFC, the ALJ discussed Plaintiff's treatment records in depth before proceeding to the medical opinions at issue in this case.  First, the ALJ addressed Dr. Tamirisa's opinion, explicitly finding that it lacked both supportability and consistency.  The ALJ noted:

> The opinion indicated that the claimant was mildly to moderately limited in every domain of mental functioning.  However, the opinion also indicated that the claimant would be absent from work for four or more days of the month and off-task 20-percent of more of the workday. (Exhibit 11F).  The undersigned is not persuaded by this opinion.  First, it is internally inconsistent, as the claimant's impairments are described as mild to moderate, and yet would reportedly result in extreme amounts of time off-task and absenteeism.  Secondly, the opinion is devoid of any explanation, and the claimant's treatment records simply do not support a finding of more than moderate limitations in any domain of mental functioning. Accordingly, as this opinion is neither consistent with the record as whole, nor supported by explanation or examination findings, it is not persuasive.

Within the context of discussing Dr. Tamirisa's opinion, the ALJ did not restate the specific evidence in the record he relied upon to determine that the opinion lacked consistency with the overall record.

The ALJ also discussed the opinions of two State Disability Determination psychiatric consultants who had reviewed the record and opined that Plaintiff did not suffer from any severe impairments. He found that they were likewise unpersuasive.  Specifically, the ALJ noted that although Plaintiff's symptoms decreased with consistent medication use, she continued to experience anxiety and panic attacks in work environments exceeding her RFC.  Therefore, the ALJ found that these opinions lacked consistency.

Finally, the ALJ considered a report by Plaintiff's mother and Plaintiff's own testimony at the hearing.  Although Plaintiff testified that she is "unemployable," the ALJ considered her ability to care for her personal hygiene, take care of family members, and work part-time at odds with the "level of severity" alleged by Plaintiff and her mother.  Notably, the ALJ did not conclude "that

[Plaintiff]'s activities are unlimited, as her [RFC] reflects that her mental and physical limitations likely pose some restriction on her daily activities."

The ALJ went on to conclude that Plaintiff could not perform any past relevant work under her current RFC.  A vocational expert testified that with her RFC, Plaintiff could perform the jobs of linen room attendant (213,239 jobs in the national economy), mail clerk (69,822 jobs), and final assembler (229,240 jobs).  Based on this testimony, the ALJ determined that Plaintiff was not disabled because she could perform jobs that exist in significant numbers in the national economy.

Disagreeing with this result, Plaintiff filed for review of the ALJ's decision by the SSA Appeals Council on March 10, 2022.  The Appeals Council denied the request on June 3, 2022, making the ALJ's opinion the final agency decision in this matter.  Plaintiff then filed for judicial review on August 3, 2022.

## II.    Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides that the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive.[1]  The Court must therefore determine whether the Commissioner's factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standard.[2]  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such

---

[1] 42 U.S.C. § 405(g).

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

evidence as a reasonable mind might accept to support the conclusion."[3]  The Court may "neither

reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[4]

An individual is disabled under the Act only if she can "establish that she has a physical or

mental impairment which prevents her from engaging in substantial gainful activity and is

expected to result in death or to last for a continuous period of at least twelve months."[5]  This

impairment "must be severe enough that she is unable to perform her past relevant work, and

further cannot engage in other substantial gainful work existing in the national economy,

considering her age, education, and work experience."[6]  The Social Security Administration has

established a five-step sequential evaluation process for determining whether an individual is

disabled.[7]  The steps are designed to be followed in order.  If it is determined, at any step of the

evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent

step is unnecessary.[8]

The first three steps of the sequential evaluation require the ALJ to assess: (1) whether the

claimant has engaged in substantial gainful activity since the onset of the alleged disability;

(2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the

severity of those impairments meets or equals a designated list of impairments.[9]  If the impairment

---

[3] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[5] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[6] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002); 20 C.F.R. § 416.920 (2005)).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

[8] *Barkley*, 2010 WL 3001753, at *2.

[9] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[10]

After assessing the claimant's RFC, the ALJ continues to steps four and five, which require the ALJ to determine whether the claimant can perform her past relevant work, and if not, then whether she can generally perform other work that exists in the national economy.[11]  The claimant bears the burden in steps one through four to prove a disability that prevents the performance of her past relevant work.[12]  The burden then shifts to the Commissioner at step five to show that, despite his alleged impairments, the claimant can perform other work in the national economy.[13]

### III.    Analysis

Plaintiff's entire argument centers on whether the ALJ failed to address the supportability and consistency of Dr. Tamirisa's opinion before finding it unpersuasive.  If so, Plaintiff argues, then substantial evidence does not support Plaintiff's RFC, rendering the ALJ's decision reversible error.  Although in her Reply Plaintiff acknowledges that the ALJ specifically mentioned the supportability and consistency of Dr. Tamirisa's opinion, she still contends that the ALJ was required to rearticulate his findings and analysis while addressing the persuasiveness of Dr. Tamirisa's opinion.

20 C.F.R. § 416.920c(b)(2) requires ALJs to explicitly consider the supportability and consistency of any medical opinions in evaluating Social Security disability cases.  In determining

---

[10] *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[11] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[12] *Lax*, 489 F.3d at 1084.

[13] *Id.*

a medical opinion's supportability, the ALJ must examine "the objective medical evidence and supporting explanations presented by a medical source."[14]   Likewise, ALJs must determine whether an opinion is consistent "with the evidence from other medical sources and nonmedical sources in the claim."[15]

The ALJ's reason for giving a certain weight to any medical opinion "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[16]   The Tenth Circuit, however, has expressly found that an ALJ need not repeat his analysis of the evidence when discounting a physician's opinion if the ALJ discusses that evidence elsewhere in her opinion.[17]   Where "it is not difficult to determine what inconsistencies the ALJ relied upon," courts will not find reversible error.[18]

## A.    Supportability

In the present case, the ALJ discussed both the supportability and consistency of Dr. Tamirisa's opinion, finding each lacking.   First, he concluded that Dr. Tamirisa's opinion lacked supportability because it was conclusory and "devoid of any explanation."   In other words, the ALJ found that there was nothing in Dr. Tamirisa's opinion itself that supported her conclusions

---

[14] 20 C.F.R. § 404.1520c(c)(1); *see also, e.g.*, *Mileto v. Comm'r, SSA*, 2022 WL 17883809, at *3 (10th Cir. 2022) ("We hold the ALJ did not err in finding that the limitations identified by Mr. White were not supported by objective medical evidence. In support of his opinion on Ms. Mileto's RFC, Mr. White largely cited her subjective complaints of numbness and neck, hand, and foot pain . . . . The ALJ's finding was an appropriate application of the supportability factor.").

[15] *Id.* at § 404.1520c(c)(2).

[16] SSR 96-2P 1996 WL 374188 at *5.

[17] *See Webb v. Comm'r, Soc. Sec. Admin.*, 750 F. App'x 718, 721 (10th Cir. 2018) ("And contrary to Mr. Webb's assertion, relying on those other medical opinions, which are all discussed earlier in the decision (and thus are apparent from the ALJ's decision itself), does not constitute an impermissible post hoc justification.").

[18] *Id.*

that Plaintiff would require four days off each month.  It is unclear how the ALJ could have done more to meet his burden of addressing the supportability of Dr. Tamirisa's opinion.  Having reviewed the record, the Court concludes that the ALJ's finding here was supported by substantial evidence.  Dr. Tamirisa's opinion lacks any internal analysis or evaluation of objective medical evidence.  Instead, it is a brief two pages of checked boxes without explanation.  Therefore, the ALJ did not err by failing to address the supportability of Dr. Tamirisa's opinion or finding that the opinion lacked the same.

Plaintiff makes much of the fact that the ALJ characterized Dr. Tamirisa's opinion as internally inconsistent.[19]   In her view, the ALJ's opinion that "absent from work for four or more days of the month and off-task 20-percent of [sic] more of the workday" would "result in extreme amounts of time off-task and absenteeism" is itself inconsistent.  Plaintiff points out that Dr. Tamirisa's opinion lists different limitation levels ranging from "Extremely Limited" to "Moderately Limited."   The opinion defines as extreme limitations as reducing overall performance by 90%.  In contrast, a moderate limitation results in only a 30% reduction in performance.  Plaintiff views Dr. Tamirisa's opinion as internally consistent with its own definition of moderate limitations because she stated Plaintiff would be absent and off task roughly 20% of the time, which each are less than the 30% reduction in performance allowed for by her moderate limitations.

For her part, Defendant argues that "reduction in performance," "time off-task," and absenteeism each measure different things.  Thus, if Plaintiff took four days off a standard 20-day work month and was off task an additional 20% of the time she was at work, she would not be

---

[19] Although Plaintiff's brief uses the term "inconsistency" when arguing this point, it really is a supportability argument, as the issue is whether Dr. Tamarisa's opinion supports its own conclusions.

working during 40% of her time employed.  And during the time spent actually working, Plaintiff's overall performance would still be 30% less than average due to her moderate limitations.  In short, Defendant argues that Plaintiff's interpretation would lead to Plaintiff only performing at 40% capacity compared to an average worker, which is inconsistent with Dr. Tamirisa's opinion that Plaintiff had only moderate limitations.

These arguments—each being a plausible interpretation of the opinion—nevertheless miss the point.  All that is required of the ALJ is for him to address the supportability of a medical opinion and make a decision regarding that opinion which is supported by substantial evidence. As the Court has already determined, substantial evidence supports the ALJ's determination that Dr. Tamirisa's opinion lacked supportability because she did not analyze any objective medical evidence or explain her conclusions.[20]  Based on this determination, the ALJ did not err in giving Dr. Tamirisa's opinion little weight.  Even if Dr. Tamirisa's opinion is internally consistent, the only way Court could find reversible error is if it held that the opinion's internal consistency *outweighs* its lack of analysis or explanation. In other words, this would require reweighing the evidence.  This the Court cannot do.  Therefore, Plaintiff's argument is unavailing.

In any case, it seems clear that the ALJ interpreted "Moderately Limited" in line with Defendant's reasoning, viewing the projected time absent or off task as in addition to Plaintiff's overall reduction in performance.  It is not the Court's role to substitute its own interpretation of Dr. Tamirisa's opinion in place of the ALJ's.  As it stands, the opinion supports this interpretation

---

[20] *See Jeri A. C. v. Kijakazi*, 2022 WL 3868150, at *5 (D. Kan. 2022) ("It is not this court's nor the parties' place in substantial evidence review to decide the 'best' understanding of Dr. Gray's opinion.  Rather, it is the court's duty to determine whether the ALJ's understanding is supported by the evidence.").

without any internal explanation or evidence suggesting otherwise.   Accordingly, substantial evidence supports the ALJ's determination that Dr. Tamirisa's opinion was internally inconsistent and, therefore, lacked supportability.

## B.     Consistency

Likewise, the ALJ properly addressed the consistency of Dr. Tamirisa's opinion with the rest of the record.  The only difference is that he did not state (or restate, rather) the evidence he relied on in making this determination immediately after discussing Dr. Tamirisa's opinion.  The record, however, makes clear what evidence the ALJ found to be inconsistent with Dr. Tamirisa's opinion—namely, the record of Plaintiff's medical and mental examinations that he discussed in detail immediately prior to addressing Dr. Tamirisa's opinion.  Contrary to Plaintiff's contentions, nothing more is required.  Therefore, the ALJ did not err by failing to address the consistency of Dr. Tamirisa's opinion.

In further arguing that substantial evidence did not support the ALJ's finding of inconstancy, Plaintiff emphasizes her symptoms, namely "revealed abnormalities such as anxious and distractible mood, pre-occupied thought process, fair insight and judgment, abnormal thought content, somewhat pressured speech, tearful [sic], and distrusted [sic] others."  She also notes her fair to guarded prognoses and medication-related side effects.

It appears that Plaintiff believes the objective medical evidence necessitates finding that Dr. Tamirisa's opinion was consistent with that evidence.  The Court does not agree.  Rather, the applicable standard here is whether the ALJ's finding was supported by substantial evidence.  In finding that Dr. Tamirisa's opinion was inconsistent with the record, the ALJ relied on the same evidence cited by Plaintiff.  He simply did not find that it warranted the same conclusion Plaintiff draws here.

-12-

Indeed, the record shows that despite Plaintiff's symptoms, she has consistently exhibited fair or good attention and concentration with no significant problems with memory, thought processes, or behavior when interacting with medical personal.  Her mental status examinations throughout much of 2020 and 2021 showed largely normal mental functions.  Although Plaintiff reported weight gain with medications, the evidence shows that her symptoms have generally improved with medication to that point that her therapist discouraged her from voluntarily discontinuing the medication.  Several of the instances Plaintiff relies on to show her more extreme symptoms—namely her hospital stay in January 2020 and her doctor's visit in March 2020, July 2020, and May 2021—each link these more severe symptoms to her failure to take medication. Likewise, High Plains' "[f]air to guarded" prognosis in September 2021 specifically found that Plaintiff "referred herself, is open to services, wants to relieve the distress, does have support in her daughter but being triggered by past trauma and *not taking her medication consistently*."[21] Nevertheless, her therapy visits exhibit overall progress in interacting with her family members and developing coping mechanisms for anxiety.

In light of this evidence, the ALJ agreed with the part of Dr. Tamirisa's opinion stating that Plaintiff had mild to moderate mental limitations by limiting Plaintiff to low stress work, occasional brief and task-oriented meetings with colleagues, no interactions with the public, and some control over work pace.  He disagreed with Dr. Tamirisa's conclusion that Plaintiff needed four days per month off work and 20% of time at work off task.  Substantial evidence supports this finding.  Any other interpretation of the evidence would be just that—an interpretation substituting

---

[21] SSA R. at 666 (emphasis added).

-13-

this Court's judgment for that of the ALJ.  Accordingly, the ALJ did not err by failing to adequately address the consistency of Dr. Tamirisa's nor by finding that it lacked the same.

**IT IS THEREFORE ORDERED** that the judgment of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated this 30th day of January, 2023.

This case is closed.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE